516-0534, Suzanne Mitchell v. Morgan Compensation Commission. Counsel, you may proceed. Good morning, members of the court, opposing counsel, my name is Dan Broombaugh. I represent the appellant, Suzanne Mitchell, the employee in this case. The primary issue, kind of boiled down in this case, is the date of maximum medical improvement found by the Book Comp Commission of August 5th, 2013. I would state that that date is clearly against the manifest weight of evidence, and there's significant medical treatment and TTD owed after that date, which was denied by the commission. When did she return to full duty work? I'm sorry? When did she return to full duty work? She was actually returned to full duty work prior to that date, and then she was taken off work of overtime again after that date. So she had actually been sporadically working full time prior to the August 5th, 2013 date. She had been taken off of overtime once before, and there was a time before she had been reported to only work sit-down duty. So while she had been released and returned to work full duty, there was a time period where she was not allowed to work overtime, and she was actually not released by the doctor either. So you're pointing out there was no medical opinion about her injury that she was released back to work. You're saying the record doesn't contain a medical opinion that she reached MMI? Is that your argument? Actually, there's seven doctors that say that she wasn't MMI. The August 5th, 2013 date is probably one of the worst dates that could have been picked by the commission. As this Court's aware, this positive test for whether someone is at MMI is whether their condition is stabilized. But does the record need to contain as a matter of law medical opinion that she reached MMI? Is that required? I don't know that it's required, but I certainly think it's a factor that's looked at. Oh, it's a factor. Yeah, and I think it's a pretty important factor in this case, especially when out of those seven doctors, none of which say that she was MMI on that date, two of those are the respondent's own doctors. So on the August 5th, 2013 date, you'll note that the petitioner is treating with Gateway Occupational Health. Her employer, the respondent in this case, is Gateway Hospital. They are quite literally a parent company and a company underneath that. So in my opinion, the petitioner is treating with the respondent. So she's treating with the respondent at Gateway Occupational Health on August 5th, 2013. On that day, she is undergoing active medical treatment. And on that day, the doctor recommends pain medications, continued physical therapy, and a follow-up with Gateway Occupational Health. Wasn't there a substantial issue in this case that her problems or the majority of her problems were related to a pre-existing degenerative condition? I think that's... And not her accident? Actually, I would disagree because... Well, that's what the commission found. Well, I think the commission said that she was not credible, but I think that's... It's more of a medical argument. If you look at the medical prior to this date of accident, and you look at her family physician's notes, she had complaints of right hip pain and what was called sciatic pain. After this accident, there is no mention of right hip pain. Everything has to do with her left... Her low back, her left leg, her left radiculopathy and pain down into her left leg. So the doctors have recognized that she had a pre-existing condition. Nobody's disputing that. Even Dr. Burnett, the treating physician, said... What did Dr. Bernardini have to say? Dr. Bernardini said that she had a pre-existing condition as well, and that Dr. Bernardini even admitted that the credibility question wasn't really a credibility question. He admitted in his deposition that she didn't actually have low back pain prior to this accident, which is what she testified to. He admitted in his deposition that she had right hip pain, and that was it, and the sciatic... I might be mistaken, but my notes indicate that he testified that she had a pre-existing degenerative disc disease that was not related to her work accident. That's absolutely correct, but he also testified that that pre-existing condition could have been aggravated by this accident. He opined that the claimant simply suffered a lumbar strain or a temporary aggravation of her pre-existing degenerative disc disease. Should it return to her baseline within six to eight weeks of her July 19th work accident? Correct. That is what he said. He also did testify that it could have been an aggravation, which is what Dr. Burnett said. Part of the reason why I think the Commission's picking of August 5th, 2013, is the incorrect date of manifestation... I'm sorry, not date of manifestation, the MMI date, is that even Respondent's own doctor, Dr. Bernardini, did not pick that date. Dr. Bernardini clearly said six to eight weeks after the accident. The date picked by the Commission was 17 days after the date of accident. Did she return to full-duty work for the first time on August 5th, 2013? No, she was actually returned to work full-duty on August 2nd, and I think once before prior to that. She had been returned to work full-duty pretty soon after the accident. And again, I would emphasize that she was returned to work full-duty by the Respondent. She's treated at Gateway Occupational. So the big issue I find with the maximum... My notes indicate to me that she saw Dr. Knapp on August 5th, 2013, and the clinic discharge summary from that visit states that claimant is cleared to perform all job functions associated with regular job duties, and that she returned to full-duty work on that day. Can you testify that she continued to experience pain and ask for additional assistance in performing job duties? Correct, yes. That note says that, and the note prior says the exact same thing. They're kind of carbon copies of themselves. So essentially what we have is the Respondent themselves disagreeing with their own opinions and advocating for an MMI date that they don't even agree with. You'll note in the record the Respondent in front of the Commission actually advocated for an MMI date after the one picked by the Commission. The Respondent said the MMI date picked by the arbitrator was wrong, and we think it should be August 30th, which is, again, a totally separate date picked by the Commission in this case. I think it's very difficult for the Respondent to come and make an argument for an MMI date they themselves do not agree with. Well, the Commission's not bound by that. I mean, their decision was she reached MMI on August 5th, 2013, the date she returned to full-duty work, right? Is that what the Commission found? Correct. So your argument is that she's continuing to be treated and she's got pain, but that ties in with the Commission's rationale that since this was a result of a preexisting degenerative condition, the pain and suffering was related to that, not the work accident, even though she's being treated. But I think the Commission relies on Dr. Bernardi whenever they come to that conclusion that it's from a preexisting condition. So what's wrong with that? Dr. Bernardi's opinion says that she was not in MMI on August 5th, 2013. But one doesn't necessarily follow from the other. I mean, the Commission understood what Bernardi said. This was a strain. That's all it was, and she returns to full-duty work on August 5th, according to them, and remains at full-duty work until she's terminated for some other reason. And the Commission said, well, she's well enough to go back to full-duty work and work at full-duty, and it was only a temporary thing. We're going to say she was at MMI on August 5th when she went back to work. So what's wrong with that? I think when you look at the full-duty compared to all the other medical evidence and all the other evidence in the case, that is against the manifest way of the evidence, because all the other evidence in the case points to an MMI date other than August 5th, 2013. The only thing that the Commission has going for her when they pick that date is the fact that she was released full-duty when you have seven other doctors that say she's not at MMI on that date. Well, will she ever be at MMI if this is a degenerative condition that will be with her for the rest of her life? I mean, the concept itself, but why is that? Well, the whole purpose of the 19B in my opinion in this case is that she's not at MMI due to this accident, which is what Dr. Gornett said, and she would be at MMI if she was able to undergo the surgery that was recommended by Dr. Gornett. The very same surgery that Dr. Bernardi says she needs, but he just says it's simply related to a preexisting condition. So I think it's – whenever you look at this case and you look at the medical evidence and you look at the medical notes and the medical opinions, the picking of the August 5, 2013 date, it simply goes against all the evidence in the case, except for the release to full duty. Everything else points to other dates, including the respondent's own view of the case itself. I mean, the respondent was monitoring and approving the treatment after August 5, 2013. This was approved by occupational medicine. Occupational medicine is necessarily occupationally related. They were approving and not only approving and authorizing it, but they were checking in with the actual respondent who was monitoring and approving and signing off on the treatment the petitioner was undergoing. In addition to that, Dr. Bernardi said some of the treatment going into 2014 was related to the accident itself. So when you look at that and everything else in the case, I don't think the August 5, 2013 date makes any sense. So what date was used? My argument is that she is not an MMI and she needs to undergo the surgery that was proposed by Dr. Burnett. The surgery, again, that Dr. Bernardi agrees she needs. Dr. Bernardi also testified that she could have sustained an aggravation of her preexisting condition. Well, he said a temporary aggravation. You've got to be a little bit more accurate with the facts. He said temporary aggravation and that it was a minor strain or sprain. I think if you look at Dr. Bernardi's report really closely, he waffles on a lot of that. He uses a lot of shoulds and coulds. He doesn't really have a solid opinion on a lot of that. He hedges on quite a bit of his opinions, which is why he probably, and in fact I know he does say temporary aggravation, but he also says aggravation that might not be temporary in a lot of other places. He hedges a lot of his opinions. All right, so notwithstanding Bernardi's opinion, your argument comes down to a plastic manifest would argument. You're saying you've got Bernardi here, you've got all this other medical evidence on the other side, and that was the conclusion that, in your opinion, is clearly apparent, based on the totality of the evidence. Is that what you're saying? I am saying, yes. I think it's clear just based on, even if you just look at the medical opinions, like I said, there's seven doctors, all who took a look at this lady. None of them have said she was MMI, including two of the respondents, seven doctors. It's very hard for me to agree with the Commission's finding that the manifest was temporary. Well, how many have said it was temporary aggravation? Just Dr. Bernardi and then Dr. Gornett would have said it was an actual aggravation. They didn't use the word temporary. And then, like I said, treatment was being monitored and authorized and approved by the respondent through October of 2013. And, again, that was with Gateway Occupational. An injection was recommended. Yeah, but if you have a progressive degenerative condition that involves pain and not work-related, aren't you going to seek treatment for a long, long time? You might, but not with the respondent. I think that's what separates this case. In addition to that, prior to this accident, there was no recommendation for physical therapy. The petitioner hadn't been recommended for injections. Surgery had not been recommended. And, again, this comes down to what exactly, what condition she had prior to this accident. Prior to this accident, she had complaints of right hip pain and sciatic pain, and she was on pain medications, and that's it. And after this accident, she has complaints of left hip pain, low back pain, pain going down into her left leg. Physical therapy is recommended. Injections are recommended. And, ultimately, surgery is recommended. This is a clear aggravation of a preexisting condition, one that is not temporary. And I think the medical evidence bears that out. And I would ask that the Commission's decision binding the MMI date of August 5, 2013, be reversed. Thank you. Thank you, Counsel. Counsel, you may respond. Good morning. May it please the Court, Counsel. My name is Chris Dennard. I represent the respondent, Gateway Regional Medical Center, in this matter. In respondent's opinion, this is a straightforward case involving the manifest weight and credibility determinations. The Commission ultimately determined that petitioner's testimony regarding her pre-incident versus post-incident complaints were unreliable. That's strongly supported by the medical records here. What we have is essentially her denying any prior symptoms at all, referable to the lower back. It's undisputed that she was diagnosed with right-sided sciatica. She presented for treatment on May 23, 2013, and July 9, 2013. The last time she was seen on July 9, 2013, the diagnosis is clear of right-sided sciatica, muscle spasms. She was also prescribed a narcotic medication, Nucenta, and Flexeril. Now, when she was confronted with this at trial, and I think it's important to keep in mind that she's a nurse, she acknowledged that a diagnosis of right-sided sciatica could consist of pain or would stem from the lower back. So she understood that, but she still denied any symptoms referable to her lower back. She didn't inform any of her physicians that she had this prior treatment, despite the fact that it was a little more than 10 days prior to her work incident. Now, it's certainly something that's relevant, and Respondent doesn't deny that we initially authorized this treatment, but we were not aware that she had any of these pre-existing conditions. So the timeline in this case and the initial authorization is basically based on her failing to provide any history of her prior lower back symptoms that were significant enough for her to be prescribed narcotic pain medication. There's also a reference in the notes that she'd been experiencing similar symptoms about two years prior. So this is something, it's not just a few visits, this is something that's longstanding. She has a prior history. So you're saying had you known this, you would not have provided any treatment? Well, and I don't know if I would go that far, because in these types of cases, when you're looking at it, typically you go out and get an IME opinion. I think we may have, what we may have said is we're not authorizing any further treatment until we get that opinion back. So I think it would have played out a little bit differently. And, you know, one of the important things that we highlight in our brief is the mere acceptance of the initial treatment isn't an admission of liability. We can still go back and dispute. So we get this information, we get Dr. Bernardi's IME opinion, and ultimately the commission found that she was at MMI as of August 5, 2013. Now, we candidly acknowledge that's not necessarily the date that we argued for. But what we're looking at here is... What date did you argue for again? So Bernardi said six to eight weeks. And essentially that was, I believe it was August 30, 2013. And that's just based on the IME. And that would explain, opposing counsel suggested that there was a problem, because she was still receiving occupational treatment from the respondent after August 5. Yeah, and I think that's where it is. So you're saying it was relied more on your IME. The continuation was you relied on the IME with that number of weeks, which would take out to August 30th. Yeah, and essentially that's what our position was based on. Now, as we noted in our brief, what we're reviewing here, though, is the commission's decision. And we're looking to see if there's any evidence to support that. Now, I think there is. She was placed, released to full duty as of August 5, 2013. She had returned to all of her prior, her normal duties. There's some mention that she wasn't able to complete overtime. But the fact is she was able to perform the same job duties that she was before prior to the incident. Now... Well, how do you respond to his general argument that notwithstanding Dr. Bernardi, the overwhelming weight of the medical evidence favors his position? How do you respond to that? You know, and I don't think I necessarily agree with that position. Because, as I said, the physicians, the only physicians that examined her that were aware of this preexisting history was Dr. Bernardi. He was the only one with the notes prior to her injury or prior to her alleged August or July 19, 2013 incident. Dr. Gornett ultimately received those and reviewed Dr. Bernardi's report. But none of those original physicians were aware of these prior symptoms. And there was a suggestion that Dr. Bernardi also agreed with an injection. That was discussed. Her original treating physician declined to perform that, didn't think she needed any additional treatment. Dr. Bernardi also strongly disagreed. And I think this is worth looking a little bit further at Dr. Bernardi's testimony. But I think his opinion is pretty clear. Regardless, he doesn't believe Petitioner is a surgical candidate in this case. She doesn't have the exam findings that you're looking for. Certainly, the studies are something that potentially could warrant it. But when you match it up with her subjective complaints and the physical exam, she's also got a number of morbid factors that he doesn't think she's a surgical candidate. And I think what the Commission is doing in this case is they're looking at all the evidence together. And they're saying she has these prior complaints. She's got these issues with credibility. Dr. Bernardi had a chance to review these prior records showing preexisting complaints. And it's Petitioner's burden to prove entitlement to ongoing benefits. And in this case, the best way to determine when she was at MMI is when she was released to return to work full duty. That was August 5, 2013. And I think looking at the evidence here, there's certainly evidence to support that conclusion. I think that's what this case really comes down to, is this is a determination of credibility with respect to Petitioner. It's her burden to prove her case. And the mere fact that she continued to treat is largely irrelevant because she had these symptoms before the – or she had similar complaints preferable to her lower back prior to the incident. She denied that. And, you know, it just creates questions. Why is she denying this when she's getting narcotic pain medication just days before the work incident? And she declines to report that to any of her physicians. So I think the commission is looking at it through that lens. And really, there's other factors, obviously, to looking at when someone reaches MMI. But in this case, they said, we just can't trust her complaints about whether – or trust her testimony about whether her complaints are work-related, are preexisting. They found that August 5, 2013 date she was released to full duty. That's a more objective measure rather than relying on her testimony. And she was able to perform her job duties at that point. And she had been performing them until her termination for an unrelated issue. And that's what the crux of this case comes down to. Is there enough evidence to support the decision? And the Respondent's position is that there's clearly enough evidence in the record. Even if it's something that, you know, the court may not have reached the same decision as a matter of first impression, this is something where, you know, a rational trial effect could have reached the same conclusion. And therefore, the commission's decision should be upheld. Thank you. Thank you, Counsel. Counsel, you may reply. How about all those prior treatments that she denied? May the 23rd, July the 9th, taking narcotic medication for sciatica problems? Sure. I certainly think that's important. And, in fact, I would look at that evidence as evidence that supports her testimony. I think if you look at the notes and you look at the testimony. That supports her testimony? I believe it does. She didn't tell, she denied ever having it. I think it's very important to look at what she actually denied and what was asked of her. She was asked at trial whether she had any low back pain. She denied having low back pain. She admitted that prior to this accident she had right hip pain, which is exactly what the note says. The prior notes from before this accident, for the very top of the note, says, primary complaint, right hip pain. And she's never actually diagnosed with right-sided sciatica. It's put in quotes, the diagnosis is sciatic pain. And, again, this is on her right side. Didn't Elmish, what's the doctor's name, Elmishusney? Dr. Elmishusney. Yeah, didn't he diagnose right-sided sciatica? I think his diagnosis is actually, quote, sciatic pain. I don't think she's ever given a formal diagnosis of sciatica. And I think that's important because sciatic pain is a pretty wide range of symptoms. Your sciatic nerve runs from your low back down to your foot. Never told her treating physicians about this prior treatment? She didn't tell them about the prior treatment because all the problems she was having post-accident had nothing to do with her right-sided sciatic pain. Every note you look at for post-accident has to do with low back pain, left hip pain, left thigh pain, left calf pain, and left radiculopathy. I'm going to assume that she didn't tell her doctors about the right-sided hip pain she was having prior to this accident because it was a totally different body part and had nothing to do with her low back. And she's a trained nurse? She is. And Bernardi said that that was the problem. Bernardi actually said that was what he interpreted. That was what the notes suggested is what he actually testified to. Because I asked him directly in his testimony if she had prior low back pain, and his testimony was clearly no. And his testimony was that by looking at those prior notes and seeing that she had right hip pain, he interpreted that she had low back pain, and that was his interpretation of those notes. Not his doctor. Correct, but that goes directly to the credibility issue. She wasn't asked, did you have sciatic pain or did you have right hip pain? Well, she was asked if she had right hip pain, which she admitted to. She was asked if she had low back pain. She testified she did not have low back pain, which Dr. Bernardi supported. Dr. Bernardi said she did not have low back pain. So it's very hard to say she has a credibility issue whenever she was asked to testify whether she had low back pain. He said no, and all the records actually support that, including Dr. Bernardi. In any event, you'd have to agree the commission is the sole judge of the credibility of the witnesses, is it not? It is. Yes, I would agree, and I think they got the credibility issue wrong in this case. Okay, let's take credibility out of it. How does your case stand there? If we take credibility out of it, I don't know how I lost this case, to be quite honest, Your Honor. I mean, I think when you look at the medical opinions in this case, there is not one medical opinion that supports an MMI finding date of August 5, 2013. When you look at the Respondent's own doctor, it's like Respondent's counsel said with regard to Dr. Bernardi's opinions. Dr. Bernardi was well aware of what her prior medical treatment was. He had those notes. He had those notes. He didn't have a lot of the other ones, but he had enough to write the report that he wrote. He had those notes, and he still found that she was not at MMI on August 5, 2013. So it's very hard to reconcile his report, knowing full well her prior treatment. Can the commission disagree with the doctor's opinion as to MMI? I think they can, but I don't think they've gotten it. Did Dr. Bernardi found that she wasn't at MMI on August 5? His opinion was that she would have been at MMI. He said she should have returned to her baseline six to eight weeks post-accident. When did he examine her? I don't have the date of his examination off the top of my head, Your Honor, but it would have been probably sometime in 2014 or 2015. So you would be happy if the date were changed to August 30, is that right? I would not. I would not, but I certainly think it's difficult for a commission to find an MMI date that no one in this case is recommending, including, like I said before, the respondents. But the commission's reasoning was really rather simple. They said it was a temporary aggravation. Bernardi said it was a temporary aggravation. He said that she would be at MMI within, what did he say, six to eight weeks of July the 19th, and she was able to return to full-duty work on August the 5th and continue full-duty work until she was terminated for reasons other than this. And the commission turned around and said, well, if it's temporary and she's capable of returning to full-duty work and everything that she's got is the result of degenerative disc disease, we think she's at MMI the day she went back to work. And that's what the commission did. They did, and I think them doing that was against the manifest way of the evidence, and especially when you look at Dr. Bernardi's opinion that medical treatment going into 2014 is causatively related to this accident. Again, they would have had to, essentially what they're doing is picking the August 2013 date, saying they're doing that date by adopting Dr. Bernardi's opinions and then ignoring Dr. Bernardi's opinions in doing so. Thank you. Thank you, counsel. Both of the arguments in this matter will be taken under advisement and written in this position. So I issue the court with 10 and a brief recess.